UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| LESLEY C. DOMINGUE | CIVIL ACTION |
| VERSUS | NO: 08-4668 |
| OFFSHORE SERVICE VESSELS, LLC AND INTERMOOR, INC. | SECTION: "S" (3) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Offshore Service Vessels, L.L.C.'s "Motion for Summary Judgment" is **GRANTED**. (Document #21.)

### I. BACKGROUND

Offshore Service, L.L.C. (Offshore) is the owner and operator of the M/V ALEX CHOUEST, an anchor handling tug supply vessel. Offshore operated the vessel under a Master Service Contract with Anadarko Petroleum Corporation (Anadarko). InterMoor, Inc. (InterMoor), another Anadarko contractor, provided anchor handling services for the M/V ALEX CHOUEST under a Master Vessel Access Agreement. InterMoor does not own or operate vessels, but uses the back deck of vessels contracted by its customers to perform its anchor handling services.

On June 2, 2008, Lesley Domingue was an employee of InterMoor, working as a rigger;[1] and Max Buteaux was his supervisor. Domingue sustained an injury to his neck, back, and shoulders as he lifted a 250-pound, three-inch kenter link[2] on the back deck of the M/V/ ALEX CHOUEST.

Domingue filed a complaint against Offshore under the general maritime law, alleging negligence and unseaworthiness in failing to provide a safe place to work and an adequately trained crew, and against InterMoor for negligence under the Jones Act and maintenance and cure under the general maritime law. Offshore filed a cross claim against InterMoor for defense and indemnity under the Master Vessel Access Agreement. Offshore filed a motion for summary judgment on Domingue's claims of negligence and unseaworthiness under the general maritime law.

## II. DISCUSSION

**A. Legal standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of

---

[1] A rigger assists in connecting or coupling chains, cables, and wires and prepares for setting anchors used to stabilize offshore drilling vessels.

[2] A kenter link is a device used to connect or couple chains or chain to wire. It is similar to a chain link, except it comes apart. It is made of four pieces: a pin, a chock, and two wings. Doc. # 22-2 at 81. The pin runs on a diagonal through the chock and the wings. Id.

establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B. Negligence**

Domingue contends that Offshore breached its duty to provide him with a safe place to work. Specifically, he argues that Offshore failed to provide access to the tugger to break the kenter link and to a crew member to assist him separating the kenter link. Offshore argues that it is not responsible for InterMoor's specialized operations as an independent contractor, and it did not supervise Domingue or provide tools to accomplish the operations.

"The analysis of a maritime tort is guide by general principles of negligence law." Consolidated Aluminum Corp. v. C.F. Bean Corp., 833 F.2d 65, 67 (5th Cir. 1987). "Under those principles a tortfeasor is accountable only to those to whom a duty is owed." Id. "It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards

3

those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique, 79 S.Ct. 406, 409 (1959). In Scindia Steam Navigation Co. v. DeLosSantos, 101 S.Ct. 1614 (1981) the United States Supreme Court defined the vessel's duty to longshoremen. The United States Court of Appeals for the Fifth Circuit has extended the rationale of Scindia to any independent contractor. See Casaceli v. Martech Int'l, Inc., 774 F.2d 1322, 1326-27 (5th Cir. 1985). Scindia provides as follows:

> The vessel owner must provide work space, ship's gear, equipment, and tools in a condition that allows an [independent contractor], acting with reasonable care, to carry on his operations with reasonable safety. The owner must warn the [independent contractor] of any hidden dangers which the owner knows or should know about in the exercise of reasonable care. The owner need not supervise, inspect, or monitor the . . . operations for dangerous conditions that develop during that process unless required to do so by contract, positive law, or custom. He may generally rely on the [independent contractor's] exercise of reasonable care. An exception to this lack of supervisory duty exists if the shipowner becomes aware of a dangerous condition in the ship's gear during the . . . operation, and is also aware that the [contractor] is unreasonably failing to protect [the employee] against this danger. The shipowner then has a duty to intervene and repair the gear constituting the danger.

Id. at 1326 (citing Scindia Steam Navigation Co. v. DeLosSantos, 101 S.Ct. at 1621-26).

The following testimonial evidence presents the circumstances under which InterMoor and, specifically, Domingue worked aboard the M/V ALEX CHOUEST. Domingue testified in his deposition that, when InterMoor hired him, he was required to take classes in SafeGulf, water survival, and rigging. Dep., doc. #22-2 at 56-58. At the time of his injury, Domingue had worked between ten and twenty jobs as a rigger. Id. at 59.

The InterMoor crew[3] had been working aboard the M/V ALEX CHOUEST for over a

---

[3] InterMoor had two six-man crews aboard the vessel, working twelve-hour shifts

4

week, and had almost completed the midnight-until-noon shift when the injury occurred. Id. at 69, 71. Domingue; John Kraemer, a welder; and Max Buteaux, the supervisor, were present on the day of the accident. Id. at 68. Riggers who needed help could request assistance from either the supervisor or the welder. Id. Domingue stated that he was never refused help when he asked for it. Id.

The kenter links are kept on the deck beside InterMoor's toolbox, and Domingue usually retrieves a kenter link alone by hooking it with a "chicken hook," a long pole with a hook, and pulling it. Id. at 75, 78, 175. Another rigger, whom Domingue could not identify, retrieved the kenter link on this occasion. Id. at 77.

Buteaux instructed Domingue to "break" the kenter link in order to have it ready for the coupling. Id. at 82. After initially testifying that he could not recall whether the pin had been removed or whether he removed it, id. at 85, Domingue testified that the pin was sticking out of the chock, and he removed it with his hand. Id. at 88. Domingue then grabbed the top end of the kenter link, stood it up, lifted it six to twelve inches off of the ground, and slammed it down twice "to make the weight separate it." Id. at 89-90. Domingue still had one-half of the separated kenter link in his hands when he felt the pain in his back between his shoulder blades. Id. at 92, 96, 101. Domingue did not know who completed the coupling. Id. at 110.

Domingue testified that he had used this method before to separate the kenter link without incident, and he chose this method because Buteaux had ordered him to "rush." Id. at 91, 97, 99, 187, 189. Domingue did not ask Buteaux or the other rigger for help. Id. at 200. Although there was a sledgehammer on deck, Domingue stated he did not use it because he was

5

working alone, and that method requires two people: one to step on one side of the kenter link to keep it from sliding, and the other to hit it with a sledgehammer. Id. at 96-97, 99.

Domingue stated that there were no Offshore deckhands near him on the back deck, and no captain or deckhand of the vessel gave him any orders regarding his assignment or caused him to injure his back. Id. at 184-86. Further, according to Domingue, there was no problem with the deck, he did not trip or fall, and there were no obstacles in the area where he worked. Id. at 189-191. He further testified that no Offshore employee caused his injury.

The evidence establishes that Offshore provided work space on the back deck, but did not provide tools and equipment. Offshore fulfilled its duty under Scindia to provide Domingue with a safe place to work. Offshore had no duty to supervise the InterMoor crew, and no request was made of Offshore personnel to render any assistance. Moreover, there is no evidence that Offshore was aware of hidden dangers or dangerous conditions that would give rise to a duty to warn to protect Domingue. Accordingly, Domingue has not put forth evidence to establish that there is a genuine issue for trial on its negligence claim because he has not shown that Offshore owed him a duty which was breached.

**C. Unseaworthiness**

Offshore contends that Domingue has not established that the vessel was unseaworthy at the time of the accident. Offshore argues that Domingue has alleged only an isolated act, which will not support a claim for unseaworthiness.

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence. The reasons, of course, is that unseaworthiness is a condition, and how that condition

6

came into being–whether by negligence or otherwise–is quite irrelevant to the owner's liability for personal injuries resulting from it." Usner v. Luckenbach Overseas Corp., 91 S.Ct. 514, 517 (1971). A vessel's condition of unseaworthiness might arise from circumstances such as defective gear, appurtenances in disrepair, or an unfit crew. Id. An isolated act of negligence does not establish unseaworthiness. Id.

As discussed above, Domingue does not put forth evidence of an circumstances aboard the vessel that would render the vessel unseaworthy. His isolated act of lifting the kenter link alone that resulted in an injury does not establish unseaworthiness. Accordingly, there is no genuine issue for trial on the unseaworthiness claim.

### III. CONCLUSION

Domingue has not satisfied his summary judgment burden of producing evidence of a genuine issue for trial on the claims against Offshore of negligence and unseaworthiness. Accordingly, Offshore is entitled to judgment as a matter of law, and the motion for summary judgment is granted.

New Orleans, Louisiana, this __7th__ day of October, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**